UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 10-17-GWU

GARY L. YOUNG, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Gary L. Young, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of borderline intellectual functioning, a history of right clavicle fracture, osteoarthritis of the knees, and degenerative disc disease of the lumbar spine. (Tr. 15).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Young retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-19).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and lack of work experience could perform any jobs if he were limited to lifting 50 pounds occasionally and 20 pounds frequently, and also had the following non-exertional impairments.  He: (1) could occasionally use his right arm overhead and climb ladders; (2) could not perform work subjecting the body to concentrated vibration; and (3) had a "limited but satisfactory" ability to sustain attention to perform repetitive tasks, relate to others including fellow workers and supervisors, adapt to the stress and pressures of day-to-day work activity, and

understand, remember, and follow instructions. (Tr. 234-5). The individual would also have a second grade reading ability. The VE responded that there would be jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 235).

On appeal, the court concludes that the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mr. Young alleged disability beginning September 1, 1995 due to back problems which left him unable to lift, bend, or carry, as well as limited use of his right arm and an inability to understand written instructions. (Tr. 68). The ALJ noted that he had filed a prior application for SSI which was denied in an ALJ decision on April 4, 2005. (Tr. 13). In view of the fact that the plaintiff had not submitted any new evidence material to the previous application, the present ALJ declined to reopen it. (Id.). Therefore, the only period at issue is the plaintiff's condition after the date of his current SSI application, April 19, 2005. (Tr. 50-3).

At the administrative hearing in July, 2007, Mr. Young appeared to relate a large amount of his neck and back pain to an accident in March, 2007 in which he wrecked a four-wheeler; however, he stated that he had back and leg pain even before that. (Tr. 226-8). He testified that he could hardly walk out to his yard and it would be painful to lift a gallon of milk. (Tr. 229-30). He described feeling "aggravated" by his inability to do anything, and although he had been on the anti-

depressant medication Zoloft for two years he was unable to tell if it helped. (Tr. 233).

There are no medical records relating to the 2007 accident in the transcript. Records from prior to the current SSI application show that Mr. Young had neurosurgical treatment following a December, 2002 motor vehicle accident, which included an MRI of the lumbosacral spine showing a herniated disc at two levels. (Tr. 101-3, 109-11). A neurosurgeon, Dr. Brett Scott, recommended conservative treatment and concluded that surgery would probably not be helpful. (Tr. 109).

Records relevant to the current application include another MRI from August, 2005 showing protrusions at the same two levels of the lumbosacral spine (Tr. 163-4), but Mr. Young told treating sources at the Mud Creek Clinic that he could not afford a neurosurgical consultation and he was only given medication (Tr. 210). No functional restrictions were suggested.

Dr. Kip Beard had performed a consultative physical examination on June 9, 2005. (Tr. 129). He stated that objective findings supported some limitation in the use of arms and reaching overhead and "probably" some restrictions on lifting and carrying and repetitive bending at the waist. (Tr. 134). State agency physicians who reviewed the record in July and September, 2005 concluded that the plaintiff would be capable of performing physical activities consistent with the ALJ's hypothetical question. (Tr. 154-61, 185-91).

The plaintiff argues on appeal that the ALJ did not give deference to the opinion of his treating physicians, but points to no part of the record in which the treating sources offered an opinion concerning restrictions.  The mere diagnosis of a condition says nothing about its severity.  See Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988).  Since the opinion of the state agency reviewers is uncontradicted, it is supported by substantial evidence.

Regarding mental limitations, a physician's assistant at Mud Creek Clinic prescribed Zoloft beginning in October, 2005 for complaints of anxiety and depression, and the dosage was later increased with positive results.  (Tr. 205-9).  Mr. Young refused a referral to a mental health clinic.  (Tr. 207).

Mr. Phil Pack, a licensed psychological practitioner, conducted a consultative mental status examination on May 31, 2005.  (Tr. 123).  He appeared to deny having any mental problems, saying, "I ain't crazy, I'm just sore."  (Tr. 124).  Mr. Pack noted that he had a disheveled appearance with a very dramatic presentation, and because he had only 5 correct responses in the Rey 15-Item Test, he was thought not to be making his best effort. (Tr. 124, 127). Intelligence testing showed a full scale IQ score of 77, and on the Wide Range Achievement Test-III Mr. Young was able to read at the second grade level.  (Tr. 126).  Mr. Pack diagnosed borderline intellectual functioning and "rule out" personality disorder.  (Tr. 127).  Consistent with the ALJ's hypothetical question, he indicated that the plaintiff would

have a fair (defined as "limited but satisfactory") ability to understand, retain, and follow instructions, sustain attention to perform repetitive tasks, relate to others including fellow workers and supervisors, and adapt to the stress and pressures of day-to-day work activity. (Tr. 127-8). Once again, there is no evidence of greater restriction.

The plaintiff failed to carry his burden of showing disability. The ALJ's findings are supported by substantial evidence, and the decision will be affirmed.

This the 15th day of September, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**